McDonald vs. Cook.

## McDONALD vs. COOK.

1. An injunction which had been granted to restrain proceedings to complete sales made under an execution, and to set aside such sales, being dissolved, the court of chancery has no power to render a judgment against the complainant for the amount of his judgment at law.

2. Sales under execution will not be set aside, because the property was advertised for sale on two different days, by different sets of advertisements, it appearing that such second advertisement was induced by an additional levy, and it also appearing that no injury resulted from the sale under such circumstances.

## APPEAL from Marion Circuit Court.

GLOVER AND CAMPBELL, *for Appellant.*

1. The confusion of advertisements, and the refusal to sell a portion of the attached property, and the sale of property not attached, constituted irregularities sufficient to vitiate the sale, of all which Cook had notice, these things having been done by his attorneys, and at his request. Hayden vs. Dunlop, 3 Bibb, 216; 3 Dana, 621; 5 Blackf., 262.

2. The judgments of the appellant constituted in equity a fair set-off, since by the insolvency of Cook no remedy was left him at law. The doctrine held by the Circuit Court that McDonald, not being *legal* owner of the judgments, could not set off, is exceedingly technical, and the decree was very hard. McDonald owes Cook some $800 or $900, and Cook owes him a much larger sum, for which judgments have been obtained. McDonald is perfectly solvent; Cook perfectly insolvent; nevertheless, the court dissolves the injunction.

3. The court below had no power to decree in favor of the appellee, the payment of the judgment at law against him.

SCOTT, J., *delivered the opinion of the Court.*

This was a bill in chancery, filed 24th October, 1842, by McDonald, against Cook and others, for an injunction and relief. The bill states that in 1842, two judgments were rendered against the complainant in the Marion Circuit Court; one in favor of Cook for $594 73, and costs, the other in favor of Bird, Griffith & Co., (who were likewise parties to

the suit,), for the sum of $206 78, and costs.  The suits were commenced against the complainant, as a non-resident.  Cook's judgment was a general one, the other was only against the property attached.  Twenty-four lots in the town of Hannibal were attached in the two suits.  Executions issued on the judgments, returnable to the September term of the Marion Circuit Court.  A portion of the attached property, and some other, was sold under the executions.  Cook became the purchaser of four lots, for the sum of $50; all the remainder of the property was purchased by Edward McDonald, M. D. Bates, and Bird, Griffith & Co.  Seven lots were sold in mass, of which Bates became the purchaser.  That the purchase money has not been paid, and that no deeds have been executed.  That the property was advertised to be sold on the 15th September, but was not sold on that day, nor was the sale postponed by any order of court.  That the sale of the lots in mass, was illegal and void.  That the lots purchased by Cook had been previously sold by McDonald and the purchasers in possession.  Complains of the sale to Bates of lots Nos. 8 and 9, in block 33, as they had been previously sold, and valuable improvements made thereon.  That the property sold was worth $2500· That complainant offered to pay plaintiff in his own paper, which he refused.  The bill prays that the sales may be set aside, and for an injunction to stay all proceedings under the executions.  Afterwards, in Sept. 1844, an amended and supplemental bill was filed, stating that since the filing of the original bill, it had been discovered that Henry Cook was wholly insolvent when that bill was filed, and that he is still insolvent.  That after the refusal of Cook to receive satisfaction of his judgment against the complainant in his (Cook's) own paper, the complainant, in November, 1843, brought suit on notes he held against him, which had been executed to others, and recovered about a thousand dollars against him.  That the complainant is the owner of the judgments, and prays that they may be set off against Cook's judgment.

Henry Cook answers the bill, and admits most of the facts it contains· That Edward McDonald, the brother and confidential agent of the complainant, purchased the greater part of the property, and with a view of preventing the respondent from obtaining satisfaction of his judgment, withheld the payment of the purchase money from the sheriff.  That some of the property was advertised for sale on the 15th September, by the sheriff, but he being afterwards required to make an additional levy, appointed the 16th of the month for the sale of the property seized under both levies, on which day the property was accordingly sold.  That the debt owed by complainant to respondent, was for money paid for him

as a co-security with J. H. Curd. That he did offer to settle so much of said judgment as belonged to him, with the paper complainant held against respondent, though he believed it had only been placed in his hands for collection. That J. H. Curd was a co-security with him for the debt he had paid for complainant, and was entitled to one-half of it, but that complainant refused to enter into this arrangement. That no offer of payment was made until after the sale of the property. He admits that judgments have been rendered against him, as stated in the amended bill, and says he offered his half of the judgment against the complainant in part satisfaction of them, but that he refused to accept it. Edward McDonald admits that he was an agent for his brother, and purchased the property for his use. Moses D. Bates, who is also a defendant, makes the same admission.

Bird, Griffith & Co., admit that their judgment has been satisfied, and that they have surrendered all property acquired by them at the sale. Cook and Curd became sureties for McDonald by endorsing in bank for him, and it is satisfactorily explained how the judgment against the complainant was in the name of Cook alone.

The explanation of the answer relative to the two advertisements, is sustained by the evidence. It was proved that Cook stated to McDonald as a reason for refusing to receive his (Cook's) paper in satisfaction of the judgment against McDonald, that it would frustrate a contemplated arrangement with his creditors. Cook's insolvency was established.

On hearing, the court dismissed the bill as to Cook, and entered a judgment against McDonald for the balance due Cook on his judgment, and allowed him damages for the delay occasioned by the injunction of the complainant; the complainant appealed.

We are utterly at a loss to conceive on what grounds the bill of the complainant can be sustained. The only pretence of an irregularity in the sale of the property purchased by Cook, is the two sets of advertisements. This is satisfactorily explained by the answer, which is sustained by the proof in the cause. One levy is made, and the property levied upon is advertised. Afterwards, the sheriff is directed to make an additional levy; he does so, and advertises all the property seized under both levies, to be sold on a day subsequent to that first named. We will not presume that the advertisements bore date on the same day; having been put up at different times, and bearing dates not corresponding with each other, they would have explained themselves. Besides, it is not pretended in the bill that the least injury was sustained by the complainant in

consequence of the two sets of advertisements. So far from it, the main ground relied on to set aside the sale, is, that the property had been previously sold. A strange one indeed! As to the other property sold, it· is very singular that any complaints should be made about the sale of it, or that the court should be gravely asked to set aside the sale, when it was all purchased by the agents of the complainant, and those who have since surrendered to him.

Then the equity of the case is this: a surety pays a debt for his principal, and is compelled to sue in order to recover the money. A recovery is had; property is levied on and sold; the surety is enabled to get fitty dollars worth of the property; all the rest of it is purchased in by agents of the principal, who, with a view to defeat the execution of the surety, neglect or refuse to pay the purchase money. A bill is then filed to set aside the sale, and for an injunction to restrain further proceedings; an injunction is obtained, and long afterwards, nearly two years, the principal obtains a judgment against his surety, then files an amended or supplemental bill, praying that the judgments may be set off one against the other. This was a gross perversion of the law, and the court acted very properly in refusing to set off the judgments, under the circumstances, on refusing to set aside the sale and in giving damages.—Courts should not suffer the process of the law to be prostituted to such purposes. So much of the decree as gives a judgment against McDonald, in favor of Cook, for the balance of the judgment after deducting the fifty dollars, must be set aside. There was clearly no warrant in law or equity for such a procedure. Powers & Ashley vs. T. & C. Waters, 8 Mo. R., 300. The appellant, McDonald, to pay all costs. The cause to be remanded, with directions to enter a decree in conformity with this opinion, the other Judges concurring.